## IN RE ESTATE OF CARL HUGUS.

PAUPERS:  Public Relief—Reversion of Funds.  Moneys appropriated by the board of supervisors to a blind person, under the Relief for the Blind Act, and not applied to the relief of such blind person, revert to the county upon the death of such person.

Headnote 1:  30 Cyc. p. 1144.

*Appeal from Wapello District Court.*—W. M. WALKER, Judge.

### APRIL 5, 1927.

Proceedings in probate *in re* the estate of Carl Hugus, to discover assets.  The facts are stated in the opinion.—*Affirmed.*

*Jones & White,* for appellant.

*Ernest R. Mitchell,* for appellee.

STEVENS, J.—The decedent, Carl Hugus, was blind, and a resident of Wapello County.  On or about March 5, 1918, the board of supervisors of that county, by appropriate resolution, directed the auditor to draw a warrant, at the close of each quarter, for $37.50, payable to decedent, and to deliver the same to the overseer of the poor, to be expended by her for the use and benefit of Hugus.  At the time of his death, which occurred in June, 1925, Viola Hathaway, overseer of the poor of Wapello County, had on deposit in a bank to her credit $192.32, proceeds of the warrants delivered to her by the county auditor, which

had not been expended for the use and benefit of Hugus. It was the custom of the overseer of the poor to turn the proceeds thereof, or each warrant, as issued, over to Hugus, to be expended by him; but, the fund upon which the warrants were drawn becoming depleted for a time, they were presented to the county treasurer, marked "Not paid for Want of Funds," and later, with the accumulated interest, paid to the overseer of the poor, and deposited in the bank, as stated.

The administrator of the estate of Hugus asks an order in probate, directing the overseer of the poor to pay the amount in controversy to him, upon the theory that the same is a part of the assets of the estate. The district court held that the money was in the custody of the overseer of the poor in trust for the county, and declined to grant the order prayed. From this finding the administrator appeals.

The construction of Chapter 272 of the Code of 1924 is all that is involved in this appeal. Section 5379 thereof provides that any male citizen over 21 years of age who is blind, and not a charge of any charitable institution, and who does not have an income in excess of $300 per annum, and who has resided in Iowa five years, and in the county one year, immediately before applying therefor, may be awarded as a benefit the sum of not more than $300 per annum, as the board of supervisors may fix. Section 5382 provides the form and nature of the application to be made for such benefit, and Sections 5380 and 5381, the procedure to be followed in determining whether the applicant is entitled to the benefits created. Application having been made and allowed, it becomes the duty of the county auditor to register the name, address, and number of the applicant, and the date of examination, and to certify, each year, on or before the 15th day of January, to the board of supervisors, the names and addresses of such applicants. Upon compliance with the foregoing requirements of Chapter 272, it becomes the duty of the board of supervisors to cause warrants to be drawn upon the county general or poor fund, at its discretion, properly indorsed, payable to the beneficiary during the period of his life, and while he is a resident of the county, and under the disability stated. If, in the judgment of the board of supervisors, the beneficiary cannot judiciously expend the money, it shall be paid to the overseer of the poor, or to some other person ap-

pointed by the board of supervisors, who shall expend the same for the use and benefit of the beneficiary.

The arguments of counsel proceed upon the theory that the foregoing provision for the relief and benefit of blind persons receiving an income of not to exceed $300 is in the nature of a pension, and it is contended by appellant that, as each quarterly allowance became due, the beneficiary acquired a vested interest therein.    Strictly defined, the word "pension" is applied to gratuities allowed for merit or services.   The allowance to blind persons is, it seems to us, rather in the nature of relief for the poor.   Obviously, it was not the purpose or intention of the legislature to create an estate for a blind person; although he may, if his necessities and circumstances are such as to permit him, by careful economy, to save a portion of his gratuity, create a small estate for himself.   This is, however, without bearing upon any question here involved.   It is not claimed that obligations of any kind were incurred by decedent, nor for him, in anticipation of the payment of the quarterly benefits.   We are inclined to view the statute as intended to provide relief for those who, by reason of blindness, might become a charge upon the public.   Decedent was not a pauper, nor does the act so classify those who may become beneficiaries of the provisions of Chapter 272.   Treated as a benevolence, for which the unfortunate have a claim upon the public, it does not lose its character as a relief for the poor, or assume that of a pension.

The unexpended portion of the benefit was, we think, held by the overseer of the poor in trust, to be expended solely for the use and benefit of decedent.   Death having occurred while the fund was in her possession and under her control, we are of the opinion that it belonged to the county, and reverted to the fund from which it was taken, and that it did not pass to, or become a part of the estate of, the beneficiary.   We agree with the conclusion of the district court, and its judgment and order is affirmed. —*Affirmed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.